Will the clerk please call the first case? 1-24-2432-WC, City of Chicago Appellant v. Illinois Workers' Compensation Comm'n et al., Jacob Soto-Apolli. Counsel, you may proceed. Thank you. Good morning, Your Honors, Counsel. My name is Joseph Zwick. I represent the plaintiff Appellant, City of Chicago. May it please the Court. Your Honors, in this claim, the claimant was a 32-year-old asphalt laborer and on June 11th injured his left shoulder and cervical spine while performing his duties in shoveling. Following the accident, he was diagnosed with a torn labrum in the left shoulder, and underwent surgery on December 19, 2013. He underwent a normal course of care. As of December 1, 2014, he was released without restriction, without disability relative to the shoulder. During the course of his treatment, he also began reporting left-hand numbness and underwent an MRI of the cervical spine in January of 2015. He was diagnosed with multiple degenerative changes and a herniated disc in the cervical spine. He was referred to Dr. Goldberg for an independent medical evaluation. Dr. Goldberg stated that the claimant underwent surgery and performed a three-level fusion in foraminotomy discectomy on August 13, 2015. There is no dispute that these conditions relate to the alleged accident. However, during the course of his treatment, the claimant began reporting symptoms that, according to the claimant and the medical records, became significant and debilitating. These symptoms were unrelated to the accident. Specifically, in August of 2015, the claimant reported to Dr. Goldberg post-operatively that he was, quote-unquote, walking funny. Dr. Goldberg specifically states that this complaint was not related to the accident. In April of 2016, the medical records show that he had reported a slow gait and an inability to walk on his toes and difficulty with balance. Dr. Goldberg, in his deposition, specifically stated that those complaints would be unrelated to the alleged accident. In September of 2016, the claimant was evaluated by his vocational counselor, at that time he reported a sensation of being woozy to the extent that he would drop to a knee, numbness in his legs when sitting, sitting tolerance of 15 to 20 minutes, a sensation of wobbling when walking, sensation of the knee giving out, need to use a scooter, walking limitations of one to two hours, occasional need for a cane, need for a TENS unit, a grab bar in the shower, putting tape on his hands to pick up objects, difficulty with foot pedals, stooping to stretch his back, and limitations with stairs. In his deposition, Dr. Goldberg stated that all of these conditions were unrelated to the alleged accident. All these complaints, sorry. And on July 10, following his treatment with Dr. Goldberg, the claimant came under the care of Pain Centers of Illinois. Initially, those diagnoses related to the cervical spine. However, on July 10, 2017, the complaint, the diagnosis was listed as a new complaint and listed as a failed lumbar laminectomy with complaints of low back pain and pain radiating into the legs. Those were the prevailing complaints at Pain Centers of America, Pain Centers of Illinois, beginning in July of 2017 and well into 2018. And it is noted that in December of 2015, the claimant underwent an FCE. The FCE did indicate several restrictions, but Dr. Goldberg and the evaluating doctors agreed that those restrictions were based primarily on subjective complaints by the claimant. And eventually, the claimant underwent two additional functional capacity evaluations, most notably, or most recently, on June 20, 2020. That functional capacity evaluation was provided to Dr. Goldberg. Dr. Goldberg noted the limitations in the functional capacity evaluation. And he stated that in a follow-up note on June 10, 2021, Dr. Goldberg states that the claimant had multiple ongoing complaints. He noted there was bilateral, I'm sorry, numbness in the hands, bilateral hands from carpal tunnel syndrome and low back pain into the extremities. And he stated both of these conditions are not work-related. Dr. Goldberg stated that the claimant could return to work within the restrictions set forth in the FCE. And he states, I do believe that some of these restrictions may be due to his lumbar complaints as well. When the commission ruled, made its findings regarding causal connection, the commission states that all of the claimant's complaints and conditions were related to the accident. And the commission states that all of the medical evidence supported this conclusion. And the record is clear that the opposite is true. All of the medical evidence points to the fact that any complaints involving the claimant's low back and complaints into the legs are, in fact, unrelated to the alleged accident. The problem we have here in light of the causal connection finding from the commission is that there is a significant number of medical bills that are related, would relate to the low back condition. There are permanent restrictions that are partially related to the low back and the commission didn't parse those out when finding, when reaching their conclusions with regard to the medical bills, wage differential and maintenance benefits. The, when the commission ruled with regard to the medical bills, the conclusion they start with says, having found causal connection in favor of the claimant. And so clearly they're basing their ruling for medical bills on their improper finding that all of the complaints and all the conditions were related to the alleged accident. As noted, a significant portion of the medical bills are from pain centers in Illinois and elite care prescriptions. Those records clearly state, a significant portion of those records clearly state that the treatment provided in those records are directed at the lumbar spine with the complaints of radiculopathy or pain radiating into the legs. Similarly, excuse me, similarly with regard to the wage differential benefits, as noted, an award for wage differential can't be based on speculation. And in this case, the award necessarily involves a degree of speculation because although there are restrictions set forth in the case, Dr. Goldberg ultimately concludes that a portion of those restrictions would be attributable to the, limited, would be related most notably to the lumbar spine and then an additional, additionally to the carpal tunnel syndrome. And so when the, and Carrie Staffseth, the vocational counselor presented by petitioner, admitted that when she set forth her opinion regarding wage differential and capacity for earnings, that her opinion doesn't parse out which level of restrictions relate to what condition. In this case, there is no parsing out. It's one set of restrictions and part of those restrictions would appear to be, or are related to the lumbar spine. And so necessarily the restrictions set forth by, or set forth in the FCE and the speculation with regard to wage differential includes a level of that's related to the lumbar spine. And finally, that would similarly apply to the issue with regard to maintenance benefits. During a significant period of time when claimant was alleging his inability to return to work, those significant complaints of low back pain radiating to the legs, falling down, using a cane, needing to use a handrail, all those complaints and limitations with regard to his purported inability to work would be due to complaints emanating from the low back. And finally, with regard to the maintenance benefits, your honors, the record would also suggest that claimant wasn't entirely looking to find employment. Specifically, he's presenting these numerous complaints and alleging disability or limitations in presenting himself as being more disabled than he likely was. So for all these reasons, based primarily upon the issue of causation, this matter should be remanded to the commission with directions to find that the low back complaints are unrelated to the accident, that any medical bills regarding the low back should be denied, and the award should be appropriately addressed with the understanding that the low conditions from the low back are unrelated and the award should be adjusted accordingly. So unless there's any questions, your honor, that is our position in this matter, and I thank you for your time. Any questions for counsel? If I may, Justice. Mr. Zwick, Dr. Absharif, perhaps I'm mispronouncing his name, he diagnosed Mr. Soto with post-lepidectomy syndrome, which seems to run counter to what Dr. Goldberg opined, and therefore this doctor attributed his lower back pain to his prior surgery. How would you explain that, and are you not then therefore asking us simply to re-weigh the evidence? Well, I appreciate the question, your honor. He's not relating it to the accident as I look at the records, because on July 10, 2017, he states this is a new diagnosis, and he specifically states that it's a lumbar issue, and he's specifically referring to ongoing complaints of pain bilaterally into the legs, and so his statement of stating that this is a new diagnosis would suggest that he's treating this as a new condition, and Dr. Goldberg is the only one who truly provides an opinion on this, ultimately states that these complaints in this condition is not related to the alleged accident. Okay, thank you, sir. Thank you. Any further questions? No. Mr. Letarsky, you may respond. May it please the court? Good morning, honorable justices. My name is David Letarsky. I represent Jacob Soto in this case, referred to as the claimant. This is a factual appeal, and so we apply the manifest weight of evidence standard, and as such, the court views and accepts all evidentiary findings and will not disturb the lower court's rulings unless after reviewing the record, there's no way that the lower court could have reached their conclusions. The test is whether the evidence is sufficient enough to support the lower court finding, not whether this court might reach an opposite conclusion. In getting into the issues, first as to causation, the claimant carried his burden on causation through the opinions of Dr. Silver, Dr. Cole, Dr. Goldberg, Dr. Konowitz, Dr. Kornblatt, and those three prior lower courts all agreed that that is what the majority of the evidence said, that his current condition is related to the next surgery and post-surgical complaints and treatment. The claimant's argument is based on mostly Dr. Graff, the last IM and medical examination done where he first attacks the FCE and says that claimant's pain is from low back symptoms, which at this point, we're talking about over two years beyond when the next surgery occurred, and at this point, the claimant had already been told by several doctors, listen, you're not going back to work as a heavy laborer for the city of Chicago, and that took a bit of a weight on the claimant coming to grips with that as a 32 or 34-year-old employee with goals and aspirations of rising through the ranks with the city of Chicago. So he starts to see these pain management physicians, and then even his own vocational expert, and he's just letting it all bleed on paper. What else is wrong with me? Oh, everything's wrong with me. Now, these statements in my review of the record are minimal, and with the pain management physicians, it occurs around that time in 2017, 2018, but keep in mind that he's treating with this clinic between the years 2016 through 2022, all the way up to the hearing. The statements about low back symptomology, just him complaining about how he feels on a day-to-day basis, don't run contrary to the expert positions that have been given in this case, and namely whether he had expressed some sporadic low back symptoms. He'd already been told he wasn't going to return to his old position, and that was Dr. Goldberg who pointed that out. Look, I can't sustain any low back symptomology. I'm not going to say that that is related. We aren't saying that there's a low back condition that's related, but despite seeing those records, Dr. Goldberg, the treating surgeon, said, I still believe that he's got these restrictions. He's not going to go back to his old position. He does, despite the low back ones, he's limited from the post-surgical position, and for these reasons, we think that the issue of causation should be upheld. Moving into the mental expenses, as for the bills, it's one thing to say that a majority of treatment that was entered or submitted into evidence and awarded was for low back treatment. It carries a little bit more persuasiveness if we see a ledger of, this is what we're claiming as a defense that should not have been awarded, July 17th, 2017, August 14th, 2017, and so forth. Maybe if we could actually see what the plaintiff is claiming should not have been awarded, would it be a majority of treatment or would it be more of a clerical error? One of the justices pointed out the low back laminectomy, we're supposed to rely on medical and accurate. Mr. Soto never had a low back laminectomy. This is just an error. He's referring to the neck laminectomy, and keep in mind that in those records, he is seeing a variety of different treaters every time he goes in. It's not just Dr. Abu Sharif or Dr. Nehara, sometimes it's the nurse practitioner. Tell me about yourself. Mistakes happen, but to my recollection, those mistakes were rectified and clarified after they had been treating and seeing Jacob for a period of time. With regard to the bills, again, we're not saying that the city should have to pay for any low back treatment, but what we are saying is that even the ongoing pain management and conditions, it's interwoven. If Mr. Soto had issues with pain and running through his upper extremities for the neck, maybe he also had one for the low back, but how do we decide half the bill should be paid? That's not up for me to decide, and that's not what was awarded. Moving into the wage deferential payments issue, issue number three brought by the plaintiff. To prove an impairment of earnings, the claimant has to prove his actual earnings for a substantial period of time before the accident, or in the event he's not returned to work, he must prove that he's able to return to some form of suitable employment. The only person who said the claimant could return to work, again, wielding a sledgehammer and a shovel, carrying rebar around for a day-to-day operation as a heavy laborer, was Dr. Graf, and that's based largely on this low back theory introduced by the plaintiff. Again, the claimant carried his burden by establishing an overwhelming majority of opinions, finding that the claimant could not return to work in his own line of employment, and those opinions are provided by Dr. Goldberg, Dr. Goldblatt, Dr. Konowitz, the first ATI FCE tester, the second FCE tester with improved functions, the third FCE tester with Novacare, claimant's vocational expert, Kari Staffseth, and then even the city's vocational expert hired to rebut Ms. Staffseth would not go on the record into saying that she believed that he could return to work in his own line of employment, and for this reason, we believe that the wage differential award should be upheld. Thank you, counsel. Any questions from the court? Okay. Mr. Zwick, you may reply. You're muted. There you go. Yes, thank you. So, counsel is correct with regard to the standard on review, but as we know, the court shall overturn the decision when the opposite conclusion is clearly apparent, and in this case, with regard to causation, the opposite conclusion is clearly apparent. Counsel suggests that we are relying mostly on the opinions of Dr. Graff. While significant, Dr. Graff's opinions aren't what we're relying upon. We're relying upon the totality of the medical records and the only opinions submitted with regard to the low back complaints. The only medical opinions with regard to the low back specifically state that they are not related to the accident, and so, therefore, the only conclusion with regard to the low back complaints, any treatment involving the low back, and any limitations that may be attributable to the low back is that those are unrelated to the accident, and with regard to the medical bills, claimant, of course, bears the responsibility for proving which bills are related by a and ultimately, it's the commission. The commission has to decide which bills are related and which ones aren't, and they just didn't do that in this case. Instead, they incorrectly said that everything's related, and then once they reach that point, they said, therefore, all the medical bills are awarded, and they never assessed which bills would relate to the low back and which would relate to any cervical or shoulder condition, and finally, with regard to the limitations, I would dispute the notion that the vocational counselors medically assessed any level of limitation. What the counselors do and what they testify to is that they review the limitations set forth by the medical records, and then they submit their opinions based on that, and that was part of our opinion or our issue with regard to the vocational opinion set forth by Ms. Staffseth specifically. She is providing an opinion based upon the global totality of the limitations and without parsing out any limitations that may be to the cervical spine and shoulder, and instead is providing opinions based upon the complete level of restrictions, which Dr. Goldberg states that the low back condition and carpal tunnel conditions are factors with regard to the total level of limitations set forth in the FCE, and with that, your honors, I thank you again for your time. Well, thank you, counsel, both for your arguments on this matter this morning. It will be taken under advisement, and a written disposition shall issue.